## HEBREW HOME AND HOSPITAL, INC. v. JAMES S. BREWER ET AL.
### (AC 25592)

Bishop, McLachlan and Gruendel, Js.

Argued October 14—officially released December 27, 2005

*Michael Kurs*, for the appellant (plaintiff).

*Norman A. Pattis*, for the appellee (named defendant).

*Opinion*

GRUENDEL, J. The plaintiff, Hebrew Home and Hospital, Inc., appeals from the judgment of the trial court rendered after the granting of the motion for summary judgment filed by the defendant James S. Brewer[1] on the plaintiff's claim of vexatious litigation. On appeal, the plaintiff claims that the court improperly determined that the defendant, an attorney, had probable cause to file various federal and state claims on behalf of his client, Elliott M. Kelbick. The plaintiff further claims that the court improperly found that the state law claims did not terminate in favor of the plaintiff. Because we conclude that the defendant had probable cause to bring the federal and state claims on behalf

---

[1] The plaintiff filed an amended complaint against the named defendant only and withdrew the action against Elliott M. Kelbick. We refer in this opinion to James S. Brewer as the defendant.

of Kelbick, we need not reach the question of favorable termination. Accordingly, we affirm the judgment of the trial court.

This dispute arises from the federal and state lawsuits brought by the defendant on Kelbick's behalf against the plaintiff, alleging employment discrimination and emotional distress. Until Kelbick agreed to terminate his employment with the plaintiff, he was an assistant director in the social services department of the plaintiff and worked under the supervision of Gloria Raphael, the director of social work. In early 1998, upon Raphael's retirement, the social services department was merged with the admissions department. Jonas Steiner, then age forty-three and the director of admissions, was named a vice president and head of the new merged department. In January, 1998, Kelbick, then age forty-seven, consulted with the defendant about his workplace concerns and filled out a preliminary questionnaire, answering questions about various employment practices.

On November 2, 1998,[2] the defendant filed a complaint against the plaintiff in federal court on behalf of Kelbick, alleging age and sex discrimination,[3] retaliation for protected activity[4] and state law tort claims. In its ruling on June 16, 1999, the court dismissed Kelbick's sex discrimination claim as untimely. On March 22, 2001, the court rendered summary judgment in favor of the plaintiff on the age discrimination and retaliation claims, finding that Kelbick had failed to establish a

[2] The defendant previously filed a complaint with the federal equal employment opportunity commission and the state commission on human rights and opportunities, which notified Kelbick of his right to take judicial action.

[3] The sex discrimination claim was related, in part, to a 1994 remark by Raphael that Kelbick just wanted to go home and have sexual relations with his wife when he requested time off for a ruptured Achilles tendon.

[4] Kelbick related the retaliation, in part, to an alleged 1993 incident when he was asked by his then supervisor to forge a physician's signature and subsequently filed a complaint about the supervisor's conduct.

prima facie case for discrimination. The remaining state law claims were dismissed by the federal court, without prejudice, for jurisdictional reasons.[5] In November, 2001, the plaintiff initiated a vexatious litigation action against the defendant and Kelbick, alleging that probable cause did not exist for filing the federal civil rights claims and that such claims had been commenced with the malicious intent to harass and to injure the plaintiff.

On July 6, 2001, the defendant filed a complaint in Superior Court, on behalf of Kelbick, alleging that the plaintiff was liable to Kelbick for intentional infliction of emotional distress, negligent infliction of emotional distress and defamation. The plaintiff filed a motion for summary judgment as to each of Kelbick's asserted claims, which the court granted on January 7, 2002. The defendant filed a motion to open on February 13, 2002, which the court denied on April 18, 2002. The plaintiff and Kelbick subsequently reached an agreement in which Kelbick agreed to terminate his employment with the plaintiff, and the plaintiff agreed to make assorted payments to Kelbick. Each party then released the other from liability, and both agreed to withdraw their actions against the other with prejudice.

On March 21, 2003, the plaintiff amended its vexatious litigation claim against the defendant only, restating its claims as to the federal charges and adding a claim of vexatious litigation as to the state charges. On the first day of trial, the parties agreed to prepare and to argue cross motions for summary judgment. On June 14, 2004, the court granted the defendant's motion for summary judgment and rendered judgment thereon. In doing so, the court found that the defendant had probable cause for bringing each of the federal and state law claims on behalf of Kelbick. Moreover, the court found that a

---

[5] Kelbick appealed from the court's judgment but later voluntarily withdrew his appeal.

claim of vexatious litigation against the defendant could not be sustained because the state charges were not terminated in favor of the plaintiff. This appeal followed.

"Our standard of review of a trial court's decision to grant a motion for summary judgment is well established. Practice Book § 384 [now § 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . .

"On appeal, [w]e must decide whether the trial court erred in determining that there was no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) *Zeller* v. *Consolini*, 59 Conn. App. 545, 549, 758 A.2d 376 (2000). Because the trial court rendered judgment for the defendant as a matter of law, "our review is plenary and we must decide whether the trial court's conclusions are legally and logically correct and find support in the facts that appear in the record." Id., 549–50.

"A vexatious suit is a type of malicious prosecution action, differing principally in that it is based upon a prior civil action, whereas a malicious prosecution suit ordinarily implies a prior criminal complaint. . . . Vexatious suit is the appellation given in this State to the cause of action created by statute (General Statutes § 6148 [now General Statutes § 52-568])[6] for the mali-

---

[6] General Statutes § 52-568 provides: "Any person who commences and prosecutes any civil action or complaint against another, in his own name or the name of others, or asserts a defense to any civil action or complaint commenced and prosecuted by another (1) without probable cause, shall pay such other person double damages, or (2) without probable cause, and with a malicious intent unjustly to vex and trouble such other person, shall pay him treble damages."

cious prosecution of a civil suit . . . which we have said was governed by the same principles as the common-law action of malicious prosecution." (Citation omitted; internal quotation marks omitted.) *Falls Church Group, Ltd.* v. *Tyler, Cooper & Alcorn, LLP*, 89 Conn. App. 459, 467, 874 A.2d 266, cert. granted on other grounds, 275 Conn. 908, 882 A.2d 670 (2005). "In a malicious prosecution or vexatious litigation action, it is necessary to prove want of probable cause, malice and a termination of [the] suit in the plaintiffs' favor. . . . [Establishing] a cause of action for vexatious suit requires proof that a civil action has been prosecuted not only without probable cause, but also with malice. . . . It must also appear that the litigation claimed to be vexatious terminated in some way favorable to the defendant therein." (Citations omitted; internal quotation marks omitted.) *QSP, Inc.* v. *Aetna Casualty & Surety Co.*, 256 Conn. 343, 361, 773 A.2d 906 (2001).

It is well settled that "[t]he existence of probable cause is an absolute protection . . . and what facts, and whether particular facts, constitute probable cause is always a question of law." (Internal quotation marks omitted.) *Zeller* v. *Consolini*, supra, 59 Conn. App. 554 n.5. Our Supreme Court thoroughly has described probable cause with respect to a litigant's decision to file a lawsuit;[7] however, the standard with respect to an attorney's decision to file a lawsuit on a litigant's behalf

---

[7] "For purposes of a vexatious suit action, [t]he legal idea of probable cause is a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it. . . . Probable cause is the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of. . . . Thus, in the context of a vexatious suit action, the defendant lacks probable cause if he lacks a reasonable, good faith belief in the facts alleged and the validity of the claim asserted." (Citations omitted; internal quotation marks omitted.) *DeLaurentis* v. *New Haven*, 220 Conn. 225, 256, 597 A.2d 807 (1991).

is less certain.[8] *Falls Church Group, Ltd.* v. *Tyler, Cooper & Alcorn, LLP,* supra, 89 Conn. App. 468. This court recently adopted an objective standard. "[A]n attorney's subjective belief in the tenability of a claim and the extent of an attorney's investigation and research have no place in determining the existence of probable cause in a vexatious litigation action against an attorney and . . . the presence or absence of probable cause should be judged by an objective standard." Id., 473. "[T]he objective standard which should govern the reasonableness of an attorney's action in instituting litigation for a client is whether the claim merits litigation against the defendant in question on the basis of the facts known to the attorney when suit is commenced. The question is answered by determining that *no* competent and reasonable attorney familiar with the law of the forum would consider that the claim was worthy of litigation on the basis of the facts known by the attorney who instituted suit." (Emphasis in original; internal quotation marks omitted.) Id., 474.

I

The plaintiff first claims that the court improperly found that the defendant had probable cause to institute the federal employment discrimination action on Kelbick's behalf. We begin by examining the prima facie case for the claims in that action. "The framework for the burden of production of evidence and the burden of persuasion in an employment discrimination case is well established. [*McDonnell Douglas Corp.* v. *Green,* 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)] and

---

[8] This court, however, has noted the restraint with which such claims will be recognized: "Counsel should . . . be aware that despite the increasing frequency with which resort is had to a malicious prosecution suit, it has been noted that few plaintiffs have been successful in malicious prosecution actions against their former adversary's attorneys." (Internal quotation marks omitted.) *Falls Church Group, Ltd.* v. *Tyler, Cooper & Alcorn, LLP,* supra, 89 Conn. App. 469 n.6.

subsequent decisions have established an allocation of the burden of production and an order of presentation of proof . . . in discriminatory-treatment cases. . . . First, the [complainant] must establish a prima facie case of discrimination. . . . In order to establish a prima facie case, the complainant must prove that: (1) he was in the protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) that the adverse action occurred under circumstances giving rise to an inference of discrimination. . . . Once the complainant establishes a prima facie case, the employer then must produce legitimate, nondiscriminatory reasons for its adverse employment action. . . . This burden is one of production, not persuasion; it can involve no credibility assessment." (Internal quotation marks omitted.) *Jacobs* v. *General Electric Co.*, 275 Conn. 395, 400, 880 A.2d 151 (2005). The burden of proof for establishing a prima facie case of employment discrimination is de minimis. *Chambers* v. *TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994). "The net result is that an initially vague allegation of discrimination is increasingly sharpened and focused, until the ultimate inquiry is one that is amenable to judicial resolution." *Meiri* v. *Dacon*, 759 F.2d 989, 995 (2d Cir.), cert. denied, 474 U.S. 829, 106 S. Ct. 91, 88 L. Ed. 2d 74 (1985).

The plaintiff argues that probable cause did not support the defendant's age discrimination claim, particularly the existence of an inference of discrimination. The plaintiff argues that the United States Supreme Court's holding in *O'Connor* v. *Consolidated Coin Caterers Corp.*, 517 U.S. 308, 116 S. Ct. 1307, 134 L. Ed. 2d 433 (1996), does not stand for the proposition that any age difference may be considered the basis of a reasonable belief that an inference of discrimination exists. "The fact that one person in the protected class has lost out to another person in the protected class is

thus irrelevant, so long as he has lost out *because of his age*." (Emphasis in original.) Id., 312. "In the age-discrimination context, such an inference cannot be drawn from the replacement of one worker with another worker insignificantly younger." Id., 313. Here, the defendant did not rely solely on the difference in age to support the claim of age discrimination. On January 16, 1998, the plaintiff's president sent a letter to Raphael, remarking that it was time to look to the "younger generation" to carry on the plaintiff's work.[9] When there is additional evidence of discriminatory intent, "[u]ltimately, the [small age] differential does not preclude a finding of age discrimination . . . ." *Nembhard* v. *Memorial Sloan-Kettering Cancer Center*, 918 F. Sup. 784, 790 (S.D.N.Y.), aff'd, 104 F.3d 353 (2d Cir. 1996). Thus, the defendant had evidence that gave rise to probable cause for an inference of age discrimination, even if that evidence failed to support the claim through summary judgment.

The plaintiff next claims that the defendant did not have probable cause to claim that the plaintiff retaliated against Kelbick for his participation in a protected equal employment activity. "To establish a prima facie case of retaliation, an employee must show [1] participation in a protected activity known to the defendant; [2] an employment action disadvantaging the plaintiff; and [3] a causal connection between the protected activity and the adverse employment action." (Internal quotation marks omitted.) *Terry* v. *Ashcroft*, 336 F.3d 128, 141 (2d Cir. 2003). Kelbick engaged in a protected activity in January, 1998, when he alleged in a charge to the commission on human rights and opportunities that the

---

[9] "[G]eneric statements made by managers, even though they do not refer to a particular employee, can also be used as evidence of discrimination. Statements such as 'we need more new blood in the company' or . . . 'those guys are past their prime' are likely to lead to trouble for the company." J. Hirsch, Labor and Employment in Connecticut (2d Ed. 2005) § 4-4 (d), pp. 4-42–4-43.

plaintiff had discriminated against him because of his age and sex, as well as retaliated against him for refusing Raphael's request to forge a physician's signature in 1993. Although summary judgment was rendered because there was no adverse employment action, the evidence available to the defendant before filing the complaint was sufficient to meet the de minimis burden for probable cause in a discrimination and retaliation action. "Adverse actions for purposes of the antiretaliation provisions include denial of promotion . . . threats, reprimands, negative evaluations, harassment, or other adverse treatment." J. Hirsch, Labor and Employment in Connecticut (2d Ed. 2005) § 4-4 (g) (3), p. 4-83. Kelbick presented the defendant with evidence of ongoing criticism by Raphael and others, as well as instances of other adverse treatment. Although it was not necessarily persuasive, the evidence nevertheless was sufficient such that it cannot be said that no competent and reasonable attorney familiar with the law would have proceeded with the claim.

The plaintiff finally claims that the defendant did not have probable cause to institute a sex discrimination claim in federal court. The plaintiff argues that probable cause did not exist because the defendant ignored information that the plaintiff's actions were motivated by a factor other than Kelbick's sex. Such information, however, is not relevant to the defendant's prima facie case for discrimination, but rather, relates to the employer's burden of showing a legitimate, nondiscriminatory reason for its action. See *McDonnell Douglas Corp.* v. *Green*, supra, 411 U.S. 802. The question of probable cause relates to the initial question of whether the elements of the prima facie case are met. Here, Kelbick presented the defendant with various examples of Raphael's adverse treatment of him, including the 1994 statement by Raphael that Kelbick wanted to leave work "to go home to have sexual relations with his

wife."[10] Although that evidence was not sufficient to survive summary judgment, "[p]robable cause . . . may be present even where a suit lacks merit." (Internal quotation marks omitted.) *Falls Church Group, Ltd.* v. *Tyler, Cooper & Alcorn, LLP,* supra, 89 Conn. App. 480.

The defendant had probable cause to bring each of the federal employment discrimination claims. Accordingly, the plaintiff's claim for vexatious litigation as to each count cannot survive.

## II

The plaintiff next claims that the defendant lacked probable cause to commence negligent and intentional infliction of emotional distress claims in state court. At the time the defendant instituted those claims, the Superior Court was divided on the question of whether an action for negligent infliction of emotional distress could be brought outside the employment termination context.[11] Accordingly, the defendant needed probable cause to show only that the plaintiff's conduct toward Kelbick "involved an unreasonable risk of causing emotional distress and that that distress, if it were caused, might result in illness or bodily harm." (Internal quotation marks omitted.) *Perodeau* v. *Hartford,* 259 Conn. 729, 749, 792 A.2d 752 (2002). Similarly, a claim for intentional infliction of emotional distress requires "extreme and outrageous conduct" such that it "exceeds all bounds usually tolerated by decent society

[10] Although the statute of limitations on this incident may have lapsed, "[u]nder Title VII's continuing violation doctrine, if a plaintiff has experienced a continuous practice and policy of [discrimination] . . . the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it." (Internal quotation marks omitted.) *Washington* v. *County of Rockland,* 373 F.3d 310, 317 (2d Cir. 2004).

[11] After the state law claims were filed, our Supreme Court decided *Perodeau* v. *Hartford,* 259 Conn. 729, 792 A.2d 752 (2002). Noting the split in authority, the court held that an action for negligent infliction of emotional distress in the employment context is cognizable only in termination cases. Id., 762–63.

. . . ." (Internal quotation marks omitted.) *Appleton* v. *Board of Education*, 254 Conn. 205, 210, 757 A.2d 1059 (2000). Kelbick had informed the defendant of a series of arguably degrading and egregious actions by the plaintiff and its employees, including, but not limited to, the circumstances described in this opinion. Such conduct resulted in Kelbick's seeking medical attention for anxiety. "[T]he lower threshold of probable cause allows attorneys and litigants to present issues that are arguably correct, even if it is extremely unlikely that they will win . . . ." (Internal quotation marks omitted.) *Falls Church Group, Ltd.* v. *Tyler, Cooper & Alcorn, LLP*, supra, 89 Conn. App. 480. We, therefore, cannot say that the evidence available at the time the defendant instituted suit was such that no reasonable attorney would have found the claim worthy of litigation.

As we conclude that the court in rendering judgment properly found that the defendant had probable cause for bringing the federal employment discrimination and state law tort claims, we need not reach the additional question of whether the settlement agreement reflects that the underlying actions terminated in favor of the plaintiff.

The judgment is affirmed.

In this opinion the other judges concurred.