CHARLOTTE HUNGERFORD HOSPITAL
*v.* KEVIN E. CREED ET AL.
(AC 34238)

Lavine, Robinson and Borden, Js.

 

Argued January 9—officially released July 16, 2013

*Michael G. Rigg*, for the appellant (plaintiff).

*Elizabeth M. Cristofaro*, for the appellees (named defendant et al.).

BORDEN, J. This appeal involves an action for vexatious litigation brought pursuant to General Statutes § 52-568[1] by the plaintiff, Charlotte Hungerford Hospital (hospital), against the named defendant, Kevin E. Creed, and his law firm, Newman & Creed, LLC, operating as Newman, Creed & Associates, as well as his former client, William Plante, Sr., individually and as the administrator of the estate of his deceased wife, Joanne Plante (decedent), in connection with two medical malpractice actions that Creed had brought against the hospital.[2] The principal issue in this appeal involves the interplay between General Statutes § 52-190a (a),[3]

[1] General Statutes § 52-568 provides: "Any person who commences and prosecutes any civil action or complaint against another, in his own name or the name of others, or asserts a defense to any civil action or complaint commenced and prosecuted by another (1) without probable cause, shall pay such other person double damages, or (2) without probable cause, and with a malicious intent unjustly to vex and trouble such other person, shall pay him treble damages."

[2] The underlying litigation, upon which the present action for vexatious litigation is based, involved two medical malpractice claims against the hospital commenced by Attorney Kevin E. Creed on behalf of William Plante, Sr. Creed's law firm is being sued in the present action under a theory of vicarious liability for Creed's conduct. Prior to the judgment at issue in this appeal, the trial court granted the hospital's motion to enter a default against Plante, who also is a defendant in this action, for failure to plead. Because the trial court treated the case as one principally between the hospital and Creed, with the law firm defendant merely vicariously liable for Creed's conduct, and because the parties have briefed and argued the case on the same basis, we do so as well. Therefore, we refer to Plante by name and simply refer to Creed by name as the defendant, although all that we say as to Creed applies to the law firm defendant as well.

[3] General Statutes § 52-190a (a) provides in relevant part: "No civil action or apportionment complaint shall be filed to recover damages resulting from personal injury or wrongful death . . . in which it is alleged that such injury or death resulted from the negligence of a health care provider, unless the attorney or party filing the action or apportionment complaint has made a reasonable inquiry as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in

which governs medical malpractice actions, and the requirement of lack of probable cause in an action for vexatious litigation. More specifically, the principal issue involves the effect of the failure to file a proper opinion letter of a similar health care provider as required by § 52-190a (a) on the issue of probable cause to bring a medical malpractice action that is later challenged in an action for vexatious litigation pursuant to § 52-568.

The hospital appeals from the judgment of the court, *Roche, J.*, denying its motion for summary judgment as to liability only and granting the cross motion for summary judgment in favor of Creed. The hospital claims that the court improperly denied its motion for summary judgment on liability and granted Creed's cross motion for summary judgment in that (1) the court applied an improper test to determine probable cause, (2) Creed was collaterally estopped from denying the lack of probable cause, (3) an attorney who files an action without probable cause to believe that he has complied with the opinion letter provision of § 52-190a (a) or with the statute of limitations is liable for vexatious litigation, and (4) even if collateral estoppel is inapplicable, the facts known to Creed demonstrate that he lacked probable cause to bring an action against the hospital. We affirm the judgment as to the first action and reverse as to the second action.

The hospital brought this action for vexatious litigation in 2009. Ultimately, the parties filed cross motions

the care or treatment of the claimant. The complaint . . . shall contain a certificate of the attorney or party filing the action . . . that such reasonable inquiry gave rise to a good faith belief that grounds exist for an action against each named defendant . . . . To show the existence of such good faith, the claimant or the claimant's attorney . . . shall obtain a written and signed opinion of a similar health care provider . . . that there appears to be evidence of medical negligence and includes a detailed basis for the formation of such opinion. . . ."

for summary judgment, the hospital for liability only and Creed for complete summary judgment. The court denied the hospital's motion and granted Creed's motion. The hospital's appeal followed.[4]

The procedural history is quite complex. Much, but not all, of that history is explained by our Supreme Court in the appeal of the underlying medical malpractice action. See *Plante* v. *Charlotte Hungerford Hospital*, 300 Conn. 33, 12 A.3d 885 (2011). The first malpractice action was commenced on April 26, 2006, by William Plante, Sr., individually and as administrator of the estate of the decedent, and by Adam Plante and William Plante, Jr., other relatives of the decedent, alleging in the complaint that the decedent had committed suicide in May, 2004, as a result of the professional negligence of the hospital defendants, specifically, Eleanor Stutz, a psychiatrist, and Karen Nash, a clinical social worker employed by the hospital, and the individual defendants, Peter Bull and Brian Malone, both emergency room physicians practicing at the hospital. Id., 39. The Plantes claimed that the various defendants were negligent as a result of having prematurely discharged the decedent from the hospital's emergency room, where she had presented on April 30, 2004, experiencing a severe mental health crisis, which led to her death by suicide on May 4, 2004. Id. Stutz, Nash and the hospital moved to dismiss the initial action pursuant

---

[4] Ordinarily, a plaintiff may not appeal from the denial of a motion for summary judgment, for lack of a final judgment; see, e.g., *Hopkins* v. *O'Connor*, 282 Conn. 821, 828, 925 A.2d 1030 (2007) ("[t]he denial of a motion for summary judgment ordinarily is an interlocutory ruling and, accordingly, is not a final judgment for purposes of appeal"); here, however, the parties filed cross motions and the court granted the defendant's motion. This court, therefore, has appellate jurisdiction to consider the propriety of both rulings. See *Hannaford* v. *Mann*, 134 Conn. App. 265, 267 n.2, 38 A.3d 1239 ("if parties file cross motions for summary judgment and the court grants one and denies the other, this court has jurisdiction to consider both rulings on appeal"), cert. denied, 304 Conn. 929, 42 A.3d 391 (2012).

to § 52-190a (c) on the ground that the Plantes had failed to attach to the complaint the opinion letter of a similar health care professional as required by § 52-190a (a). Id. On July 28, 2006, the Plantes filed an objection to the motion to dismiss, along with a certificate of good faith and an opinion letter purportedly from a qualified health care professional in a similar field. The Plantes represented that the report was obtained prior to initiating the action and was inadvertently not attached to the complaint at the time of service. Id. The opinion letter was, however, dated May 12, 2006, which was a date subsequent to the commencement of the initial action. The trial court, *Alexander, J.*, granted the hospital defendants' motion to dismiss the initial action on September 1, 2006.[5] Id., 40.

Creed initiated a second malpractice action against the hospital defendants on December 29, 2006, more than two years and six months after the decedent's death. Creed claimed that the statute of limitations was extended by the one year provision in General Statutes § 52-592,[6] the accidental failure of suit statute, on the

---

[5] The Plantes filed, with leave of the court pursuant to Practice Book § 10-60, an amended complaint in the initial action against the individual defendants, Bull and Malone, that included a good faith certificate and an opinion letter purportedly from a similar health care provider dated April 10, 2006, with the provider's name and qualifications redacted. The individual defendants moved to dismiss the initial malpractice action on the ground that the Plantes had failed to attach an opinion letter from a similar health care provider. The trial court, *Brunetti, J.*, denied that motion to dismiss on January 8, 2007. See *Plante* v. *Charlotte Hungerford Hospital*, supra, 300 Conn. 40.

[6] General Statutes § 52-592 (a) provides in relevant part: "If any action, commenced within the time limited by law, has failed one or more times to be tried on its merits because of insufficient service or return of the writ due to unavoidable accident or the default or neglect of the officer to whom it was committed, or because the action has been dismissed for want of jurisdiction, or the action has been otherwise avoided or defeated by the death of a party or for any matter of form . . . the plaintiff, or, if the plaintiff is dead and the action by law survives, his executor or administrator, may commence a new action . . . for the same cause at any time within one year after the determination of the original action or after the reversal of the judgment."

ground that the first malpractice action had been dismissed due to a "matter of form" within the meaning of § 52-592 (a). See *Plante* v. *Charlotte Hungerford Hospital*, supra, 300 Conn. 40. Creed attached to the second complaint, pursuant to § 52-190a (a), a certificate of good faith and an opinion letter, dated November 3, 2006, from a physician identified as a board certified psychiatrist licensed to practice in Connecticut and New York. After discovery and numerous revisions to the operative complaint, the court, *Marano, J.*, bifurcated the proceedings in order to try the accidental failure of suit claim separately from the malpractice claims. A trial on the accidental failure of suit claim was held before the court, *Pickard, J.*, which heard testimony from Grace Williamson, the registered nurse who had authored the opinion letter used in the first malpractice action, and Creed. Id., 41–42.

On April 16, 2009, Judge Pickard issued a memorandum of decision in which he held that the first malpractice action had not been dismissed due to a "matter of form" within the meaning of § 52-592 and rendered judgment in favor of the hospital defendants. See *Plante* v. *Charlotte Hungerford Hospital*, Superior Court, judicial district of Litchfield, Docket No. CV-07-5001512-S (April 16, 2009) (47 Conn. L. Rptr. 581), aff'd, 300 Conn. 33, 12 A.3d 885 (2011). The court found that Williamson was not a similar health care provider as compared with any of the hospital defendants and was not qualified in any way to render an opinion about the alleged independent negligence of the hospital for facility or staffing inadequacies. Id. Regarding the accidental failure of suit statute, the court held that "[a]lthough § 52-592 is remedial in nature and must be interpreted broadly, the dismissal of the first action in this case cannot be found to be a matter of form. The decision to engage Nurse Williamson to review the file and to provide a written opinion of negligence is inexplicable. Even a cursory

reading of § 52-190a would have revealed that Nurse Williamson did not qualify as a similar health care provider. . . . The plaintiff's lack of diligence in selecting an appropriate person or persons to review the case for malpractice can only be characterized as blatant and egregious conduct which was never intended to be condoned and sanctioned by the 'matter of form' provision of § 52-592." (Citation omitted.) Id. After the court rendered judgment in favor of the hospital defendants in the second action, the individual defendants, Bull and Malone, filed a second motion to dismiss the first malpractice action pursuant to § 52-190a (c), claiming that Williamson was not a similar health care provider authorized to provide an opinion letter against them under § 52-190a (a). On May 20, 2009, Judge Pickard granted the motion to dismiss on that ground. See *Plante* v. *Charlotte Hungerford Hospital,* Superior Court, judicial district of Litchfield, Docket No. CV-06-500587-S (May 20, 2009), aff'd, 300 Conn. 33, 12 A.3d 885 (2011).

The Plantes in their various capacities filed consolidated appeals with the Supreme Court from the ensuing dismissals by the trial court of their medical malpractice claims against the various defendants, resulting in the Supreme Court's opinion in *Plante* v. *Charlotte Hungerford Hospital,* supra, 300 Conn. 33. In that opinion, the court rendered two holdings that are pertinent to this appeal. First, construing § 52-592, the accidental failure of suit statute, the court concluded "that, when a medical malpractice action has been dismissed pursuant to § 52-190a (c) for failure to supply an opinion letter by a similar health care provider required by § 52-190a (a), a plaintiff may commence an otherwise time barred new action pursuant to the matter of form provision of § 52-592 (a) only if that failure was caused by a simple mistake or omission, rather than egregious conduct or gross negligence attributable to the plaintiff

or his attorney." Id., 46–47. Second, the court, applying that standard to the case before it, "agree[d] with the trial court's determination that the plaintiffs' lack of diligence in selecting an appropriate person or persons to review the case for malpractice can only be characterized as blatant and egregious conduct which was never intended to be condoned and sanctioned by the matter of form provision of § 52-592." (Internal quotation marks omitted.) Id., 57. Accordingly, the court affirmed the judgments dismissing the Plantes' malpractice actions. Id., 59.

Thereafter, the hospital brought this action for vexatious litigation pursuant to § 52-568.[7] The essential elements of such a statutory vexatious litigation action are: (1) the defendant procured or initiated a prior lawsuit against the plaintiff; (2) the defendant did so without probable cause; and (3) the prior proceeding terminated in the plaintiff's favor.[8] See *Somers* v. *Chan*, 110 Conn. App. 511, 542, 955 A.2d 667 (2008). The issue in this case involves the second element, namely, whether the prior malpractice actions that Creed brought against the hospital were commenced without probable cause to do so. The hospital claimed that Creed lacked probable cause to commence and prosecute the first action because he could not reasonably have believed that § 52-190a (a) had been complied with when he failed to attach an opinion letter from a similar health care provider. As to the second action, the hospital claimed that Creed lacked probable cause because he could not reasonably have believed that the dismissal of the first action was due to a "matter of form" within the meaning of § 52-592 (a) so as to extend the statute of limitations.

In their cross motions for summary judgment, the parties presented opposing claims. The hospital

---

[7] See footnote 1 of this opinion.

[8] There is no dispute in the present case that the prior action terminated in the hospital's favor.

claimed that: (1) Creed is collaterally estopped from denying that he lacked probable cause to bring the two medical malpractice actions because Judge Pickard found that his conduct in failing to attach an opinion letter from a similar health care provider was blatant and egregious; (2) even if collateral estoppel does not apply, the undisputed facts demonstrate that Creed lacked probable cause to commence and prosecute the malpractice actions; and (3) the law firm defendant is vicariously liable for Creed's tortious conduct.[9] Creed claimed that: (1) collateral estoppel does not apply; and (2) the undisputed facts demonstrate that Creed had probable cause to commence and prosecute the two prior actions. Judge Roche issued a memorandum of decision on January 11, 2012.

The court first rejected the hospital's collateral estoppel claim. The court concluded that the issue of probable cause was not fully and fairly litigated in either the first or second malpractice actions, and, therefore, Creed was not collaterally estopped from asserting that he had probable cause to bring both actions.

With respect to the issue of probable cause, the court initially addressed the first action that was dismissed on the ground that the plaintiffs had failed to attach to the complaint the opinion letter of a similar health care professional as required by § 52-190a (a). The court rejected the hospital's argument that "the facts known to Creed demonstrate that an objectively reasonable attorney would not have believed that Williamson was a similar health provider" within the meaning of § 52-190a (a), and that "[i]n asserting that the court can find a lack of probable cause based solely on the insufficiency of the written opinion letter, [the hospital] defines the scope of the court's inquiry too narrowly."

---

[9] The law firm defendant does not contest that Creed was acting within the scope of his authority on behalf of the law firm.

Instead, relying on Creed's undisputed affidavit, the court noted the following facts disclosed by Creed's investigation prior to filing the action.

On the basis of his investigation, Creed believed that the decedent took herself to the hospital on April 30, 2004. The hospital record disclosed that at intake she was weak, speaking in low mumbling voices and had a high stress level. Her chief complaint was moderate to severe depression; she had a depressed affect and was tearful. She also had a history of psychiatric problems and depression. She was observed in the emergency room for eighteen hours but was not admitted. She was primarily evaluated and treated by Nash, whom Creed initially believed was an unlicensed social worker but whom Creed later learned was a licensed social worker who worked in the hospital once a month and at all other times performed mostly administrative work. Stutz never saw the decedent but relied on Nash's representation to diagnose her and order medication. Nash observed that the decedent had increased stress, increased depression and multiple somatic complaints. The decedent also complained that she was overwhelmed by her children and had the state put them in foster care. She stated that she recently separated from her husband and was unable to sleep and eat as usual.

At least two years prior to this incident, the decedent had been in treatment at the behavioral health center of the hospital. Sixteen months prior to this incident, she had received prescriptions for numerous medications, among them sedatives, sleeping pills, antianxiety drugs and psychotropic drugs, including Trazodone. The decedent's medical records indicated that she had trouble complying with her prescription regime. At the time of her eventual release during the April, 2004 incident, her prescriptions, including Trazodone, were increased. The warning signs associated with taking

Trazodone include suicide with feelings of hopelessness, loss of appetite, withdrawing from family and friends and a change in sleeping habits.

The hospital records revealed that at the time of the decedent's visit to the hospital on April 30, 2004, Stutz diagnosed her as psychotic, depressive with high anxiety and paranoid with psychosis developed to a point where the decedent was losing contact with reality. Prior to her release, the decedent asked to be admitted but was denied admission. She refused to sign the discharge form, which reveals an entry stating, "patient refuses to sign." Later, someone crossed out this entry, and her name was written next to it. Upon her release from the hospital, her treatment providers told her to call for an appointment with the behavioral health center in two days and to see Stutz on May 4, 2004. On May 3, 2004, the decedent committed suicide by ingesting the drugs prescribed to her by the hospital. She was found at home with empty bottles of the prescribed medications and a suicide note. The note stated: "I love my children more than anything in the world. I don't want to go on without them. I told the worker at the hospital this but they said there wasn't any bed and discharged me. That's why I did not want to sign the discharge papers."

The court in the present action, drawing on this court's decisions in *Falls Church Group, Ltd.* v. *Tyler, Cooper & Alcorn, LLP*, 89 Conn. App. 459, 874 A.2d 266 (2005), aff'd, 281 Conn. 84, 912 A.2d 1019 (2007), and *Hebrew Home & Hospital, Inc.* v. *Brewer*, 92 Conn. App. 762, 886 A.2d 1248 (2005), concluded that it could not "say that the facts and evidence available to [Creed] at the time of the first action was instituted were such that no reasonable attorney would have found the claim worthy of litigation. Thus, the court finds that the defendants had probable cause to institute the first action."

With respect to the second action, which had been brought pursuant to § 52-592 (a), the accidental failure of suit statute, the court first noted that, under *Plante* v. *Charlotte Hungerford Hospital*, supra, 300 Conn. 56, a plaintiff may bring a medical malpractice action pursuant to the matter of form provision of that statute only when the failure in the first action to provide an opinion letter that satisfies § 52-190a (a) was the result of mistake, inadvertence or excusable neglect, and not egregious conduct or gross negligence on the part of the plaintiff or his attorney. The court again noted this court's decision in *Hebrew Home & Hospital, Inc.* v. *Brewer*, supra, 92 Conn. App. 768, in which a panel of this court stated: "[T]he objective standard which should govern the reasonableness of an attorney's action in instituting litigation for a client is whether the claim merits litigation against the defendant in question on the basis of the facts known to the attorney when suit is commenced. The question is answered by determining that *no* competent and reasonable attorney familiar with the law of the forum would consider that the claim was worthy of litigation on the basis of the facts known by the attorney who instituted suit." (Emphasis in original; internal quotation marks omitted.) Id.

The court in the present case applied this standard, and concluded that it could not say that no reasonable attorney would have brought the second action pursuant to the accidental failure of suit statute. This conclusion was based on the following factors. The first action was dismissed without a written decision and it was not until after the bifurcated trial in the second action that the court determined that Creed's conduct was blatant and egregious. At the time he instituted the second action, no court had expounded on the nature of the first dismissal beyond the ground asserted in the hospital's motion to dismiss, namely, the failure to

attach a written opinion letter. Further, the trial court noted that our Supreme Court in *Plante* v. *Charlotte Hungerford Hospital*, supra, 300 Conn. 49, had characterized the question of whether the failure to supply an opinion letter in a medical malpractice action was a matter of form within the accidental failure of suit statute as "an issue of first impression for this court" and had stated "that § 52-592 (a) is ambiguous about what constitutes a matter of form . . . ." The trial court therefore concluded that there was no genuine issue of material fact as to whether Creed had probable cause to institute the second action.

Thus, the court, having concluded that Creed had probable cause to institute both actions, further concluded that the hospital could not establish the essential element of its vexatious litigation action against Creed, namely, the lack of probable cause. Accordingly, it denied the hospital's motion for summary judgment as to liability and granted Creed's motion for summary judgment in full.

"Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court. . . . Our review of the trial court's decision to grant [a party's] motion for summary judgment is plenary." (Internal quotation marks omitted.) *Koutsoukos* v. *Toyota Motor Sales, U.S.A., Inc.*, 137 Conn. App. 655, 658, 49 A.3d 302, cert. denied, 307 Conn. 933, 56 A.3d 714 (2012).

I

## THE STANDARD FOR PROBABLE CAUSE

The hospital first claims that the denial of its motion for summary judgment was improper because the court applied an improper standard in evaluating whether Creed had probable cause to bring the actions against it. We agree, although we also conclude, for the reasons stated herein, that this conclusion is not determinative of this appeal.

In *Falls Church Group, Ltd.* v. *Tyler, Cooper & Alcorn, LLP*, supra, 89 Conn. App. 459 (*Falls Church I*), this court articulated a special test for probable cause in actions for vexatious litigation against attorneys. "[T]he objective standard which should govern the reasonableness of an attorney's action in instituting litigation for a client is whether the claim merits litigation against the defendant in question on the basis of the facts known to the attorney when suit is commenced. The question is answered by determining that *no* competent and reasonable attorney familiar with the law of the forum would consider that the claim was worthy of litigation on the basis of the facts known by the attorney who instituted suit. . . . We are mindful that [r]easonable lawyers can differ, some seeing as meritless suits which others believe have merit, and some seeing as totally and completely without merit suits which others see as only marginally meritless. Suits which *all* reasonable lawyers agree totally lack merit—that is, those which lack probable cause—are the least meritorious of all meritless suits. Only this subgroup of meritless suits present no probable cause." (Citation omitted; emphasis in original; internal quotation marks omitted.) Id., 474. Thereafter, in *Hebrew Home & Hospital, Inc.* v. *Brewer*, supra, 92 Conn. App. 768, this court applied the same restrictive standard in a vexatious suit against an attorney.

Our Supreme Court, however, had granted certification to appeal in *Falls Church I*, and in its ensuing opinion rejected the restrictive standard articulated by this court. See *Falls Church Group, Ltd.* v. *Tyler, Cooper & Alcorn, LLP*, 281 Conn. 84, 102–103, 912 A.2d 1019 (2007) (*Falls Church II*). The Supreme Court adopted the traditional standard of probable cause applicable to both litigants and their attorneys: "[C]ivil probable cause constitutes a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it. . . . Although the reasonable attorney is substituted for the reasonable person in actions against attorneys, there is no reason to craft a different standard that essentially would immunize attorneys from vexatious litigation claims by requiring a claimant to prove that 100 out of 100 attorneys would have agreed that the underlying claim was without merit." (Citations omitted; internal quotation marks omitted.) Id.

Our reading of the trial court's memorandum of decision convinces us that, in deciding whether there was probable cause for Creed to institute the two malpractice actions, the trial court applied the more restrictive standard articulated by this court in *Falls Church I*, instead of the traditional standard reaffirmed by our Supreme Court in *Falls Church II*. With respect to the first action, the court quoted extensively from *Falls Church I*, and then, in reaching its conclusion, stated: "This court cannot say that the facts and evidence available to the defendants at the time the first action was instituted were such that *no* reasonable attorney would have found the claim worthy of litigation." (Emphasis added.) Similarly, with respect to the second action, the court stated that "this court, once again, cannot say that *no* reasonable attorney would have instituted the

second action pursuant to the accidental failure of suit statute." (Emphasis added.)

It is true, as the hospital argues, that at some places in its memorandum of decision the court stated the traditional standard in its general discussions of probable cause, and that we should read an ambiguous memorandum of decision to support the court's decision rather than to undermine it. See *Zabaneh* v. *Dan Beard Associates, LLC*, 105 Conn. App. 134, 142, 937 A.2d 706, cert. denied, 286 Conn. 916, 945 A.2d 979 (2008). Nonetheless, we do not see any real ambiguity in the memorandum of decision. At no point did the trial court cite *Falls Church II*, and we cannot escape the conclusion that it applied the *Falls Church I* standard.

This conclusion, however, does not end our inquiry. Whether there is probable cause in a given case is a question of law, upon which our scope of review is plenary. See *Byrne* v. *Burke*, 112 Conn. App. 262, 275, 962 A.2d 825, cert. denied, 290 Conn. 923, 966 A.2d 235 (2009); see also *Falls Church II*, supra, 281 Conn. 103–12. Thus, applying the proper standard, we must determine whether, as a matter of law, Creed lacked probable cause to institute either of the two malpractice actions. We address this issue in the context of the hospital's second claim that the court improperly found that Creed was not collaterally estopped from denying that he lacked probable cause to commence both actions.

II

COLLATERAL ESTOPPEL

The hospital claims that Judge Pickard's finding in the underlying litigation that the "plaintiffs' lack of diligence in selecting an appropriate person or persons to review the case for malpractice can only be characterized as blatant and egregious conduct which was never

intended to be condoned and sanctioned by the 'matter of form' provision of § 52-592," with which the Supreme Court agreed; see *Plante* v. *Charlotte Hungerford Hospital,* supra, 300 Conn. 57; is binding on Creed in the present vexatious litigation action, and collaterally estops him from asserting that he had probable cause to institute either the first or second malpractice action. We agree with the hospital that the finding is binding on Creed as to the second malpractice action. We conclude, however, that it does not collaterally estop him from asserting probable cause as a defense for the first action.

## A

### Privity

It is black letter law that, in order for a prior determination to be barred by the doctrine of collateral estoppel, or issue preclusion, the party seeking to invoke the doctrine must establish that the issue or fact sought to be foreclosed was "actually and necessarily determined in an earlier proceeding between the same parties or *those in privity with them* upon a different claim." (Emphasis added; internal quotation marks omitted.) *Coyle Crete, LLC* v. *Nevins,* 137 Conn. App. 540, 548–49, 49 A.3d 770 (2012).

"Our Supreme Court has explained that [p]rivity is a difficult concept to define precisely. . . . There is no prevailing definition of privity to be followed automatically in every case. It is not a matter of form or rigid labels; rather it is a matter of substance. In determining whether privity exists, we employ an analysis that focuses on the functional relationships of the parties. Privity is not established by the mere fact that persons may be interested in the same question or in proving or disproving the same set of facts. Rather, it is, in essence, a shorthand statement for the principle that [the doctrines of preclusion] should be applied only

when there exists such an identification in interest of one person with another as to represent the same legal rights so as to justify preclusion. . . . A key consideration in determining the existence of privity is the sharing of the same legal right by the parties allegedly in privity." (Citation omitted; internal quotation marks omitted.) Id., 561.

This court recently considered two cases involving whether an attorney was in privity with her client for the purposes of collateral estoppel. In *Coyle Crete, LLC*, this court declined to apply the doctrine of privity to an attorney because she had not established the requisite commonality of interest between her conduct and that of her client in the prior action in question. Id., 561–62. By contrast, in *Somers* v. *Chan*, supra, 110 Conn. App. 538, this court held the attorney in privity with his client because the attorney had been in control or substantially participated in the control of the presentation in the prior action on behalf of his client. Quoting from § 39 of 1 Restatement (Second), Judgments (1982), this court explained: "A person who is not a party to an action but who controls or substantially participates in the control of the presentation on behalf of a party is bound by the determination of issues decided as though he were a party. 1 Restatement (Second), [supra] § 39 . . . . The commentary to that section explains the rationale underlying that rule: A person who assumes control of litigation on behalf of another has the opportunity to present proofs and argument on the issues litigated. Given this opportunity, he has had his day in court and should be concluded by the result. . . . We agree with that proposition. . . .

"The commentary further explains that control, as that term is used in § 39, refers to the ability to exercise effective choice as to the legal theories and proofs to be advanced, as well as control over the opportunity to obtain review." (Citation omitted; internal quotation marks omitted.) *Somers* v. *Chan*, supra, 110 Conn. App.

538–39. This court then cited and discussed with approval three cases in which courts, applying these principles, recognized that attorneys can be held in privity with their clients for purposes of collateral estoppel. See *Phelps* v. *Hamilton*, 122 F.3d 1309 (10th Cir. 1997); see also *United States* v. *Davis*, 906 F.2d 829, 833 (2d Cir. 1990) (nonparty to action can be bound by determination of issues decided in that action if it "controls or substantially participates in the control of the presentation on behalf of a party"); *Aranson* v. *Schroeder*, 140 N.H. 359, 369, 671 A.2d 1023 (1995) (court recognized that when certain factors are met, attorney should be bound as if he were a party and subject to collateral estoppel).

On the basis of these principles, we conclude that Creed was in privity with his clients with respect to the relevant aspects of both malpractice cases. First, it is obvious that he shared a commonality of interest with the clients. It was in both their interests—clients and attorney—to present legally sufficient and correct pleadings and documents to the court to properly institute both such actions. Second, it is equally obvious that Creed, as the attorney, was in control of the precise pleadings and documents to present to the court to properly institute those actions. Indeed, it is difficult to conceive of a type of action other than a medical malpractice action in which the law requires particular allegations and documentation regarding an opinion letter of a similar health care provider, for which the attorney bringing the action is more responsible and in control. Therefore, because Creed was in privity with his clients, Judge Pickard's finding of blatant and egregious conduct is binding on Creed.

## B

### First Action

We turn next, therefore, to the question of whether that finding collaterally estops Creed with respect to the first action. We conclude that it does not.

The hospital contends that Judge Pickard's finding precludes Creed from relitigating, in the present action, the question of whether he had probable cause to bring the first action. In other words, the hospital contends that Creed's blatant and egregious lack of diligence in selecting an appropriate person to review the case for malpractice, as § 52-190a (a) requires; see footnote 3 of this opinion; necessarily means that he lacked probable cause to bring the first action. Thus, the hospital argues that an opinion letter that meets the requirements of § 52-190a (a) is an essential element or part of the medical malpractice action provided by that section. We disagree.

"[C]ollateral estoppel precludes a party from relitigating issues and facts actually and necessarily determined in an earlier proceeding between the same parties or those in privity with them upon a different claim. . . . An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. . . . An issue is necessarily determined if, in the absence of a determination of the issue, the judgment could not have been validly rendered. . . . If an issue has been determined, but the judgment is not dependent upon the determination of the issue, the parties may relitigate the issue in a subsequent action. Findings on nonessential issues usually have the characteristics of dicta. . . . To assert successfully the doctrine of issue preclusion, therefore, a party must establish that the issue sought to be foreclosed actually was litigated and determined in the prior action between the parties or their privies, and that the determination was essential to the decision in the prior case. . . . Those requirements serve to ensure fairness, which is a crowning consideration in collateral estoppel cases. (Citation omitted; internal quotation marks omitted.) *Coyle Crete, LLC* v. *Nevins*, supra, 137 Conn. App. 548–49.

Contrary to the hospital's contention, the determination that the certificate of good faith required by § 52-190a (a), and supplied by Creed, was insufficient—even blatantly and egregiously so—does not equate to a determination that Creed lacked probable cause to bring the first action. The language and structure of the statute itself makes clear that the certificate does not occupy the field, so to speak, of the reasonable inquiry mandated by the statute. See General Statutes § 52-190a (a). To put it another way, as Creed does, under the language and structure of the statute, the certificate is not the end-all and be-all of the issue of probable cause to bring the first action.

The statute puts an obligation of precomplaint reasonable inquiry upon the attorney. It provides that no medical malpractice action shall be filed "unless the attorney . . . filing the action . . . has made a reasonable inquiry as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant," and that the attorney certify in the complaint "that such reasonable inquiry gave rise to a good faith belief that grounds exist for an action against each named defendant . . . ."[10] General Statutes § 52-190a (a). Thus, the attorney must, in the complaint, certify by pleading or otherwise, that he or she has made such a reasonable inquiry, and that the inquiry gave him or

---

[10] Indeed, we note that the statute does not use the phrase "probable cause" to bring the action; instead, it uses the different phrase "good faith belief that grounds exist for the action." Nonetheless, we assume without deciding, as the parties appear to do as well, that the two phrases have essentially the same meaning. See *Byrne* v. *Burke*, supra, 112 Conn. App. 274–75 ("Probable cause is the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of. . . . Thus, in the context of a vexatious suit action, the defendant lacks probable cause if he lacks a reasonable, good faith belief in the facts alleged and the validity of the claim asserted." [Internal quotation marks omitted.]).

her the requisite good faith belief that there are grounds for the action. It also provides that, "[t]o *show the existence of such good faith*"; (emphasis added); "the claimant or the claimant's attorney . . . shall obtain a written and signed opinion of a similar health care provider, as defined in section 52-184c . . . that there appears to be evidence of medical negligence . . . ." General Statutes § 52-190a (a). Furthermore, the statute specifically provides that "[i]n *addition* to such written opinion, the court may consider *other factors* with regard to the existence of good faith." (Emphasis added.) General Statutes § 52-190a (a). It then provides, moreover, that if, upon discovery, it is determined that such certificate was not made in good faith, the court "shall impose upon the person who signed such certificate [namely, the attorney who also signed the complaint] an appropriate sanction," including "reasonable expenses . . . including a reasonable attorney's fee" and possible disciplinary action by the "appropriate authority . . . ." General Statutes § 52-190a (a).

Consequently, this statutory language and structure make clear that the substantive obligation on the attorney to make a reasonable precomplaint inquiry and the subsequent obligation on him or her to file the written opinion of a similar health care provider are two distinct obligations that serve separate, although related, functions. The first is the substantive obligation to make a reasonable inquiry to determine that there are grounds for a good faith belief in the existence of a medical malpractice action. The second is the procedural obligation that the attorney secure and file a written opinion letter, which serves merely as evidence of "the existence of such good faith . . . ." General Statutes § 52-190a (a). But the statute also makes clear that the procedural obligation does not, in and of itself, determine the question of good faith or probable cause, because it

specifically provides that the court may consider other factors in addition to the written opinion.

Furthermore, our Supreme Court recently clarified the procedural function and scope of the obligation to file the written opinion of a similar health care provider. It is true, as Creed argues, that § 52-190a (c) provides that "[t]he failure to obtain and file the written opinion required by subsection (a) of this section shall be grounds for the dismissal of the action." In *Morgan* v. *Hartford Hospital,* 301 Conn. 388, 401–402, 21 A.3d 451 (2011), the court, after reviewing all of the prior case law regarding the issue, held that although "the attachment of the written opinion letter of a similar health care provider is a statutory prerequisite to filing an action for medical malpractice . . . [t]he failure to provide a written opinion letter, or the attachment of a written opinion letter that does not comply with § 52-190a, constitutes insufficient process and, thus, service of that insufficient process does not subject the defendant to the jurisdiction of the court. . . . The jurisdiction that is found lacking, however, is jurisdiction over the person, not the subject matter"; (internal quotation marks omitted); and is, therefore, waived if not timely challenged by a motion to dismiss filed within the thirty day time period of Practice Book § 10-32.[11] If the failure to file any written opinion letter at all is merely a personal jurisdictional flaw that is waived if not timely challenged, then it follows that even a blatantly and egregiously insufficient opinion letter also constitutes

[11] Practice Book § 10-32 provides: "Any claim of lack of jurisdiction over the person or improper venue or insufficiency of process or insufficiency of service of process is waived if not raised by a motion to dismiss filed in the sequence provided in Sections 10-6 and 10-7 and within the time provided by Section 10-30."

Practice Book § 10-30 provides in relevant part: "Any defendant, wishing to contest the court's jurisdiction, may do so even after having entered a general appearance, but must do so by filing a motion to dismiss within thirty days of the filing of an appearance. . . ."

merely a procedural personal jurisdictional insufficiency that cannot amount to a determination that the action was brought without probable cause to believe that it was warranted.

We conclude, therefore, that Judge Pickard's finding of blatant and egregious conduct did not bar Creed from litigating in the present action the question of whether he had probable cause to bring the first malpractice action against the hospital.[12] We reach a different conclusion, however, with respect to the second action.

## C

### Second Action

The second malpractice action was brought pursuant to § 52-592 (a), the accidental failure of suit statute.[13] The issue in that case was not whether there had been probable cause to bring the first action; it was, instead, whether the Plantes, as the plaintiffs, could avail themselves of the accidental failure of suit statute because their first action had been dismissed for a "matter of form." See General Statutes § 52-592 (a). In the underlying action involving the Plantes as the plaintiffs and the hospital as the defendant, the Supreme Court held that "a plaintiff may bring a subsequent medical malpractice action pursuant to the matter of form provision of § 52-592 (a) only when the trial court finds as a matter of fact that the failure in the first action to provide an

---

[12] The hospital also claims that, even if collateral estoppel does not apply, the "facts known to Creed demonstrate that he lacked probable cause." Specifically, the hospital argues that, as to the first malpractice action, the facts known to Creed "establish that an objectively reasonable attorney would not have believed that Williamson was a 'similar health care provider' " under § 52-190a (a). Thus, this argument is premised solely on the notion that the presence or absence of probable cause under § 52-190a (a) is governed by the sufficiency of the opinion letter, a notion that we already have rejected. We therefore reject this claim as well.

[13] See footnote 6 of this opinion.

opinion letter that satisfies § 52-190a (a) was the result of mistake, inadvertence or excusable neglect, rather than egregious conduct or gross negligence on the part of the plaintiff or his attorney." (Footnote omitted.) *Plante* v. *Charlotte Hungerford Hospital*, supra, 300 Conn. 56. Applying that standard to the case before it, the court affirmed Judge Pickard's finding that "the plaintiffs' lack of diligence in selecting an appropriate person or persons to review the case for malpractice can only be characterized as blatant and egregious conduct which was never intended to be condoned and sanctioned by the matter of form provision of § 52-592." (Internal quotation marks omitted.) Id., 57. Thus, our Supreme Court concluded that the Plantes were legally barred from instituting the second action.

Because we already have concluded that Creed was in privity with the Plantes in the second action, we also conclude that the doctrine of collateral estoppel bars him from relitigating whether he had probable cause to bring the second action. If he was legally barred from bringing the second action because of his blatant and egregious conduct in the first action, it is, therefore, obvious that he could not have had probable cause to bring the second action.

Putting this issue in terms of probable cause, moreover, leads to the same conclusion. As our Supreme Court has stated: "[T]he legal idea of probable cause is a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it." (Internal quotation marks omitted.) *Falls Church II*, supra, 281 Conn. 94–95. We conclude that blatant and egregious conduct in bringing the second malpractice action precludes, as a matter of law, the concomitant conclusion

that the person who engaged in that conduct nevertheless was exercising ordinary caution, prudence and judgment in bringing that action.

Creed argues that in order for collateral estoppel to apply, there must have been an explicit finding by the previous court that he lacked probable cause and without such a finding, the issue cannot be considered to have been fully and fairly litigated. We disagree. We reiterate that for the purposes of collateral estoppel, "[a]n issue is necessarily determined if, in the absence of a determination of the issue, the judgment could not have been validly rendered." (Internal quotation marks omitted.) *Coyle Crete, LLC* v. *Nevins*, supra, 137 Conn. App. 549.

Creed characterizes the probable cause inquiry before the court as whether "on the basis of the facts known by the [attorney], a reasonable attorney familiar with Connecticut law would believe he or she had probable cause to bring the lawsuit." (Internal quotation marks omitted.) *Embalmers' Supply Co.* v. *Giannitti*, 103 Conn. App. 20, 35, 929 A.2d 729, cert. denied, 284 Conn. 931, 934 A.2d 246 (2007). As previously discussed, our Supreme Court, in rendering its judgment that the second action was legally barred, necessarily determined that Creed's actions were unreasonable when it concluded that the accidental failure of suit statute did not apply due to Creed's own prior blatant and egregious conduct. *Plante* v. *Charlotte Hungerford Hospital*, supra, 300 Conn. 44 ("[t]he trial court found that the plaintiffs 'had not made a reasonable precomplaint inquiry at the time the first action was commenced . . . because [they] had not received an opinion from a similar health care provider' "). It follows that this conclusion precludes Creed from relitigating whether he believed he had reasonable grounds to commence the second action.

Thus, we disagree with the court in the present action and Creed that he had probable cause to bring the second action because it was not until the conclusion of the bifurcated trial before Judge Pickard in the second action that his conduct would be characterized as blatant and egregious, and that it was not until *Plante* v. *Charlotte Hungerford Hospital*, supra, 300 Conn. 57, that our Supreme Court decided that a matter of form did not include such conduct.[14] Although the legal standard for a matter of form under § 52-592, as applied to the failure to supply a proper opinion letter under § 52-190a (a), may not have been conclusively determined until that Supreme Court decision, Creed certainly was aware of the facts of his conduct during the entire time period, and should have been aware of this court's decision in *Rosario* v. *Hasak*, 50 Conn. App. 632, 637–38, 718 A.2d 505 (1998), in which this court stated that prior egregious and blatant conduct precluded access to the accidental failure of suit statute. Id., 639; see also *Pepitone* v. *Serman*, 69 Conn. App. 614, 620, 794 A.2d 1136 (2002) (plaintiff could not avail himself of § 52-592 when his actions that led to dismissal of his case did not constitute "mere accident or simple negligence"). In sum, we conclude that the issue of probable cause was necessarily determined by Judge Pickard in the prior malpractice action and, therefore, the court improperly rendered summary judgment in favor of Creed as to the second action.[15]

---

[14] Our Supreme Court recently reaffirmed this standard in *Santorso* v. *Bristol Hospital*, 308 Conn. 338, 63 A.3d 940 (2013). The court held that, under *Plante* v. *Charlotte Hungerford Hospital*, supra, 300 Conn. 33, the plaintiffs' counsel's failure to file a good faith certificate and opinion letters in the first action was not the result of mistake, inadvertence, or excusable neglect and, thus, the first action, which was stricken for failure to comply with the requirements of § 52-190a (a), was not defeated for matter of form within the meaning of the accidental failure of suit statute. Id., 356–57.

[15] The hospital also argues that, as to the second action, even if collateral estoppel does not apply, the facts known to Creed demonstrate that an objectively reasonable attorney would not have believed that the termination of the first action was merely a "matter of form" within the meaning of the

The judgment is reversed only as to the granting of the defendant's motion for summary judgment as to the issue of probable cause in the second action and the case is remanded with direction to grant the plaintiff's motion for summary judgment as to the second action and for further proceedings according to law. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

accidental failure of suit statute. Because we have already decided, in the hospital's favor, that Creed is barred by the doctrine of collateral estoppel from relitigating the issue of probable cause regarding the second action, we need not consider this claim.