******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ELLEN SCHAEPPI ET AL. *v.* UNIFUND CCR
PARTNERS ET AL.
(AC 36524)

Lavine, Beach and Prescott, Js.

*Argued April 16—officially released November 3, 2015*

(Appeal from Superior Court, judicial district of
Hartford, Hon. Robert F. Stengel, judge trial referee.)

*Kirk D. Tavtigian, Jr.,* for the appellants-appellees
(plaintiffs).

*Robert W. Cassot*, with whom, on the brief, was *Cristin E. Sheehan*, for the appellees-appellants (defendant
Tobin & Melien et al.).

*Jonathan D. Elliot* and *Drummond C. Smith* filed a
brief for the appellee (named defendant).

*Opinion*

BEACH, J. This case is before us for the third time. The plaintiffs, Ellen Schaeppi and Ernest Schaeppi, appeal from the judgment of the trial court rendered, in part, in favor of the defendants, Tobin & Melien, Joseph M. Tobin, P.C., Peter E. Melien, P.C. (collectively, T&M), and Unifund CCR Partners (Unifund). The plaintiffs' action sounded in vexatious litigation; they alleged that the defendants lacked probable cause to pursue an action seeking to foreclose a judgment lien. On appeal, the plaintiffs claim that the trial court erred in concluding that (1) Unifund proved its defense of reliance on the advice of its counsel, T&M, and (2) T&M had probable cause to institute and to pursue part of the foreclosure action.[1] On cross appeal, T&M claims that the trial court erred in concluding that it did not have probable cause to pursue an appeal from the denial of its motion to open the judgment in the foreclosure action. Unifund filed a brief contesting the plaintiffs' arguments on appeal. We disagree with the plaintiffs' claims on appeal and agree with T&M regarding the issue it raised in its cross appeal.

The following undisputed facts and procedural history, as previously set forth by this court are relevant to our analysis. "On July 27, 2004, [Unifund][2] [brought an action] seeking to collect credit card debt allegedly owed by the [plaintiffs]. A hearing was held on October 31, 2005, before an attorney fact finder. In his January 5, 2006 report,[3] [the fact finder] recommended judgment in favor of the [plaintiffs] because [Unifund] had failed to establish that the credit card debt had been assigned to [Unifund]. [Unifund] objected to the acceptance of the findings of fact on February 6, 2006. The court, *Miller, J.*, remanded the matter to the attorney fact finder for a rehearing on the issue of whether there had been a valid assignment of the credit card debt. After the hearing on remand was held on March 27, 2006, the attorney fact finder recommended, in a report dated March 30, 2006, that judgment enter in favor of [Unifund]. On June 19, 2006, the court rendered judgment in favor of [Unifund], stating: Judgment shall enter in favor of [Unifund] on the fact finder's report as revised after remand. [Unifund] placed a judgment lien[4] on real property owned by the [plaintiffs] which was recorded in the Glastonbury land records on July 18, 2006. [Unifund] then filed with the court a motion for an order of weekly payments on August 25, 2006, seeking payments of $35 per week. On September 11, 2006, the court, *Miller, J.*, granted the motion and set payments of $25 per week to commence on October 11, 2006.

"By complaint filed on November 13, 2006, [Unifund] then sought foreclosure on the judgment lien. On September 10, 2007, [Unifund] filed a motion for partial summary judgment as to liability. By memorandum of decision filed March 20, 2008, the court, *Hon. Robert*

*Satter*, judge trial referee, denied the motion because the issue of what portion of the [plaintiffs'] interest in their property is exempt . . . gives rise to an issue of fact, which . . . precludes the granting of [Unifund's] motion for summary judgment. . . . The court went on to state that there was another ground on which [Unifund's] motion for summary judgment must be denied. . . . The court indicated it had taken judicial notice of and examined the court file of the debt collection action that formed the basis of the foreclosure action. It concluded from that examination that no money judgment had entered in that case because the attorney fact finder had made no finding as to the amount of debt. Moreover, the court continued, Judge Miller had subsequently ordered that judgment enter in favor of [Unifund] on the basis of the attorney fact finder's report without stating the amount of the judgment. Judge Satter reasoned that, because General Statutes § 52-350f provides in relevant part that a money judgment may be enforced, by execution or by foreclosure of a real property lien, to the amount of the money judgment, and General Statutes § 52-380a (a) provides in relevant part that [a] judgment lien, securing the unpaid amount of any money judgment, including interest and costs, may be placed on any real property, the judgment lien underlying the foreclosure action was of questionable validity. The court, however, acknowledging that the only motion before it was [Unifund's] motion for summary judgment, declared that it was making no such ruling.

"On March 28, 2008, [Unifund] filed a motion with the court, *Miller, J.*, seeking clarification of its June 19, 2006 judgment. The court held a hearing on the matter on May 12, 2008, during which [Unifund] indicated that it was seeking to have the court clarify the dollar amount of the judgment. After hearing from both parties, the court concluded that there never was a finding as to the amount of the debt and that the judgment should not have been allowed to enter without a finite dollar amount. As a result, the court further concluded, there never was a money judgment entered in the action, and, therefore, under the unique circumstances of the case, there was no basis for the court to clarify the judgment.

"On July 31, 2008, the [plaintiffs] filed a motion for summary judgment, attaching Judge Satter's March 20, 2008 memorandum of decision addressing [Unifund's] motion for partial summary judgment. . . . After a hearing was held on the matter, Judge Satter, by memorandum of decision filed October 15, 2008, granted the motion, concluding that, as a matter of law, a judgment of no amount, underlying a judgment lien in an incorrect amount cannot form the basis of a foreclosure action. . . .

"[In the first appeal, *Unifund CCR Partners* v.

*Schaeppi*, 126 Conn. App. 370, 11 A.3d 723 (2011), [Unifund] appealed from the court's granting of the [plaintiffs'] motion for summary judgment, claiming, inter alia, that the court improperly concluded that the judgment lien that formed the basis of the foreclosure action was invalid as a matter of law because it sought to secure a money judgment of no amount. . . . [Unifund] advanced two alternate arguments in support of that claim. First, [Unifund] argued that the judgment rendered by Judge Miller on June 19, 2006, was a full and final judgment as to liability and damages because the amount of the judgment was ascertainable from the record. . . . [Unifund] argued that, in the alternative, the order for weekly payments entered by the court on September 11, 2006, was a money judgment and, could, therefore, serve as the basis for a judgment lien. . . .

"This court rejected both of [Unifund's] arguments and affirmed the trial court's granting of the [plaintiffs'] motion for summary judgment. . . . In reaching its decision, this court first determined that the June 19, 2006 judgment was not a full and final judgment because it did not specify with certainty the amount for which it was rendered, nor was the amount ascertainable from the record or by mere mathematical computation. . . . Without deciding whether the installment payment order of September 11, 2006, was a money judgment, this court concluded that it was impossible for it to have served as the basis for the judgment lien, as the judgment lien was recorded weeks before the court entered its installment payment order. . . .

"On June 21, 2011, following this court's affirmance of the trial court's granting of the [plaintiffs'] motion for summary judgment, [Unifund] filed a motion to open and modify the judgment of June 19, 2006. The court denied that motion and [Unifund's] subsequent motion for reargument and reconsideration filed on August 2, 2011. [Unifund], on November 7, 2011, filed a motion for articulation, requesting that the court articulate its rationale for denying [Unifund's] motion to open and modify the June 19, 2006 judgment. On December 2, 2011, the court granted [Unifund's] motion for articulation and explained in its articulation that the judgment [Unifund] sought to open, lacking a specific dollar amount, was not a valid judgment. Thus, the court explained, it did not have the ability to open a judgment that was never really a judgment." (Citations omitted; internal quotation marks omitted.) *Unifund CCR Partners* v. *Schaeppi*, 140 Conn. App. 281, 283–86, 59 A.3d 282 (2013).

Unifund again appealed. The second appeal was taken from the court's denial of the June 21, 2011 motion to open and modify the judgment rendered on June 19, 2006. Id., 286. This court rejected Unifund's argument that the trial court erred in denying its motion to open, reasoning that because "there existed no valid judgment

to open in the first instance . . . the court did not abuse its discretion in finding that it could not open that which was never properly entered as a judgment." Id., 287.

The plaintiffs then brought the present action alleging both statutory and common-law vexatious litigation against the defendants for pursuing the foreclosure action against them, and sought damages for embarrassment, humiliation, loss of sleep, and mental and emotional distress, physical injury and aggravation of preexisting physical and emotional injuries. The plaintiffs also sought an award of double or treble damages pursuant to General Statutes § 52-568,[5] punitive damages, costs, interests and attorney's fees.

In its December 18, 2013 decision, the court, *Hon. Robert F. Stengel*, judge trial referee, found it undisputed that T&M commenced a foreclosure action against the plaintiffs on behalf of its client, Unifund. The court found that Unifund acted on the advice of its counsel, T&M, and, thus, Unifund proved its special defense. The court further found that T&M had probable cause to initiate and to pursue the foreclosure proceedings up to and including the filing of the motion to open. The court found, however, that T&M did not have probable cause to pursue the appeal from the denial of the motion to open, but also that T&M did not act with malice. The court awarded the plaintiffs double damages pursuant to § 52-568, for a total amount of damages of $28,000. This appeal and cross appeal followed.

I

The plaintiffs first claim that the trial court erred in determining that Unifund satisfied its burden of proving that it had relied on the advice of counsel in initiating and prosecuting the foreclosure action. We disagree.

"Advice of counsel is a complete defense to an action of . . . vexatious suit when it is shown that the defendant . . . instituted his civil action relying in good faith on such advice, given after a full and fair statement of all facts within his knowledge, or which he was charged with knowing. . . . The defendant has the burden of proof with respect to this special defense. . . . Whether there was a full and fair disclosure of material facts as required by the advice of counsel defense is a question of fact . . . and [a]ppellate review of findings of fact is limited to deciding whether such findings were clearly erroneous." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Verspyck* v. *Franco*, 274 Conn. 105, 112–13, 874 A.2d 249 (2005).

The trial court found that T&M had provided legal representation to Unifund since 1999 and that T&M represented Unifund at all relevant times in this foreclosure action. The court further found that Unifund had relied in good faith on T&M's legal advice after giving

T&M a full and fair statement of all the relevant facts in the case. The court concluded that Unifund had relied on the representations of T&M in the foreclosure action and found Unifund's defense proved.

The plaintiffs argue that proof of reliance was lacking because no employee of Unifund testified at the vexatious litigation trial and no witness with personal knowledge testified that Unifund relied on T&M's advice in initiating and prosecuting the foreclosure action. The plaintiffs emphasize certain evidence that was admitted in the vexatious litigation trial to support their proposition that Unifund did not prove good faith. The plaintiffs highlight e-mail communications between representatives of Unifund and T&M, that indicate that T&M informed Unifund that it had secured a judgment against the plaintiffs and asked for permission to foreclose the judgment lien, and a representative of Unifund responded affirmatively. They also point to evidence that T&M had faxed to Unifund statements from the plaintiffs regarding their illnesses and lack of financial resources. T&M asked Unifund if it wanted to proceed with the foreclosure and Unifund answered affirmatively. In turn, Unifund argues that, on the basis of the testimony at the vexatious litigation trial provided by Scott Dellaventura, an attorney for T&M at the relevant times, it was clear that Unifund relied on the advice of T&M.

"In a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. . . . It is within the province of the trial court, as the fact finder, to weigh the evidence presented and determine the credibility and effect to be given the evidence." (Citation omitted; internal quotation marks omitted.) *Cadle Co.* v. *D'Addario*, 268 Conn. 441, 462, 844 A.2d 836 (2004). The evidence that the plaintiffs stress, moreover, does not demonstrate lack of reliance. That T&M received Unifund's consent before initiating and continuing to prosecute the foreclosure lawsuit is not dispositive as to whether Unifund relied on the advice of T&M; an attorney should proceed with a lawsuit only at the instance of the client. The material point is whether there was a valid judgment lien on which to foreclose. In the e-mail highlighted by the plaintiffs, an attorney for T&M represented that a judgment had been obtained. On being informed of the judgment, Unifund gave consent to proceed with foreclosure.

The plaintiffs point to no law for the proposition that specific evidence from designated witnesses must be introduced in order to satisfy the element of good faith reliance. Dellaventura testified at the vexatious litigation trial that T&M represented Unifund in as many as 2000 debt collection matters per year and that T&M would "go through them to see if there were any conflicts or any other issues that we couldn't proceed on

and then [we] would begin sending out a letter of demand . . . ." He further testified that he believed that there had been a judgment of $9382.05 against the plaintiffs in the foreclosure action and that he did not tell Unifund that the judgment was invalid. He recommended to Unifund that, in order to execute on the judgment, various steps had to be taken. He testified that Unifund generally agreed with his recommendations. For the foregoing reasons, the trial court did not err in finding that Unifund had proved its defense of reliance on advice of counsel.

## II

The primary issue in this case concerns the trial court's conclusions regarding probable cause. On appeal, the plaintiffs claim that the court erred in concluding that T&M had probable cause to initiate and to pursue the foreclosure action at all, because the judgment lien sought to be foreclosed was invalid. On cross appeal, T&M claims that the court erred in concluding that there was no probable cause to appeal from the denial of the motion to open. We disagree with the plaintiffs' claims on appeal and agree with T&M's claim in its cross appeal.

"The cause of action for vexatious litigation permits a party who has been wrongfully sued to recover damages. . . . In Connecticut, the cause of action for vexatious litigation exists both at common law and pursuant to statute. Both the common law and statutory causes of action [require] proof that a civil action has been prosecuted . . . . Additionally, to establish a claim for vexatious litigation at common law, one must prove want of probable cause, malice and a termination of suit in the plaintiff's favor. . . . The statutory cause of action for vexatious litigation exists under § 52-568, and differs from a common-law action only in that a finding of malice is not an essential element, but will serve as a basis for higher damages." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Bernhard-Thomas Building Systems*, *LLC* v. *Dunican*, 286 Conn. 548, 553–54, 944 A.2d 329 (2008).

In assessing probable cause in vexatious litigation actions against attorneys and law firms, the "critical question [is] whether on the basis of the facts known by the law firm, a reasonable attorney familiar with Connecticut law would believe he or she had probable cause to bring the lawsuit. . . . As is implied by its phrasing, the standard is an objective one that is necessarily dependent on what the attorney knew when he or she initiated the lawsuit."[6] (Citation omitted; internal quotation marks omitted.) *Embalmers' Supply Co.* v. *Giannitti*, 103 Conn. App. 20, 35, 929 A.2d 729, cert. denied, 284 Conn. 931, 934 A.2d 246 (2007).

"Whether there is probable cause in a [vexatious litigation] case is a question of law, upon which our scope

of review is plenary." *Charlotte Hungerford Hospital* v. *Creed*, 144 Conn. App. 100, 116, 72 A.3d 1175 (2013).

A

The plaintiffs claim on appeal that the court's conclusions regarding the existence of probable cause were incorrect and that T&M did not have probable cause to initiate and to continue to prosecute the foreclosure action because the judgment in the debt collection action did not state (1) the amount of debt or (2) the amount of prejudgment interest. The plaintiffs also argue that T&M lacked probable cause to continue to prosecute the foreclosure action after having received adverse rulings from various courts that the underlying judgment was unenforceable. We are not persuaded.

1

The plaintiffs argue that the court erred in its determination that T&M had probable cause to pursue the foreclosure action because an attorney could not have reasonably concluded that the judgment incorporating the fact finder's report was definitive, unambiguous, and certain as to amount. We disagree.

"To be conclusive on the parties and to terminate litigation, a judgment must be definitive and not ambiguous or uncertain; otherwise it is defective. . . . Particularly, [a] money judgment must specify with certainty the amount for which it is rendered, *or if the amount is not stated, it must be ascertainable from the record or by mere mathematical computation.*" (Citations omitted; emphasis added; internal quotation marks omitted.) *Suffield Development Associates Ltd. Partnership* v. *National Loan Investors, L.P.*, 97 Conn. App. 541, 560–61 n.19, 905 A.2d 1214, cert. denied, 280 Conn. 943, 912 A.2d 479 (2006). In some circumstances, there may be some gray area in the determination of whether the amount of a judgment is ascertainable from the record or by mathematical computation.

In the foreclosure action, the trial court and the Appellate Court disagreed on several occasions with T&M's theory that the judgment was valid. The court, *Hon. Robert Satter*, judge trial referee, granted the plaintiffs' motion for summary judgment in the foreclosure case on October 15, 2008, reasoning that the underlying judgment in the debt collection case was unenforceable because no money judgment had entered. Further, this court determined that "the judgment entered against the [plaintiffs] on June 19, 2006, was not definitive, unambiguous or certain as to the amount of damages owed." *Unifund CCR Partners* v. *Schaeppi*, supra, 126 Conn. App. 382. Subsequent to that ruling, the trial court, *Miller, J.*, denied Unifund's motion to open, stating that it could not "open a judgment that was never really a judgment." This ruling was affirmed on appeal. *Unifund CCR Partners* v. *Schaeppi*, supra, 140 Conn. App. 287.

These adverse rulings do not necessarily negate the existence of probable cause, nor do the facts underlying the judgment lien sought to be foreclosed. "[P]robable cause may be present even where a suit lacks merit. Favorable termination of the suit often establishes lack of merit, yet the plaintiff in [vexatious litigation] must separately show lack of probable cause. . . . The lower threshold of probable cause allows attorneys and litigants to present issues that are arguably correct, *even if it is extremely unlikely that they will win* . . . . Were we to conclude . . . that a claim is unreasonable wherever the law would clearly hold for the other side, we could stifle the willingness of a lawyer to challenge established precedent in an effort to change the law. The vitality of our common law system is dependent upon the freedom of attorneys to pursue novel, although potentially unsuccessful, legal theories." (Citations omitted; emphasis altered; internal quotation marks omitted.) *Falls Church Group, Ltd.* v. *Tyler, Cooper & Alcorn, LLP*, 281 Conn. 84, 103–104, 912 A.2d 1019 (2007).

An attorney familiar with Connecticut law could have examined the events in the record leading to the court's June 19, 2006 judgment and reasonably could have believed that it was reasonable to argue that the amount of the judgment was ascertainable from the record. The first fact finder report stated that "[a]s of August 29, 2002, the [plaintiffs] *owed AT&T Universal $9,382.05*." (Emphasis added). During the March 27, 2006 hearing, held prior to the issuing of the second fact finder report, the attorney fact finder stated "the only issue is whether [Unifund] is entitled to collect *the debt* . . . ." (Emphasis added). In the fact finder's second report, the attorney fact finder found that there had been a valid assignment of the debt to Unifund and that the plaintiffs were "liable to [Unifund] for the amount of the credit card charges made on the AT&T Universal Account number [in question] with interest." At the hearing following the second fact finder report, the court, *Miller, J.*, stated that the attorney fact finder found that a valid assignment had occurred and had recommended judgment "in favor of [Unifund] presumably at the same numbers as was set forth in the original fact finder's report." The court, *Miller, J.*, rendered judgment "in accordance with the decision of the fact finder." The court, *Miller, J.*, granted Unifund's motion for weekly payments on the debt.

An attorney reasonably could have deemed it plausible that in the first report, the attorney fact finder made a factual finding that the amount owed by the plaintiffs on the account in question was $9382.05. An attorney reasonably could have considered the second report, which concluded that the sole issue at that time was the validity of the assignment and recommended that judgment enter in favor of Unifund as a result of a

valid assignment. An attorney reasonably could have interpreted Judge Miller's statement at the hearing as to the amount of debt and subsequent granting of the motion for weekly payments to mean that there had been a valid judgment as to the amount of debt owed.[7] An attorney may perhaps not have predicted that the effort would be successful, but attorneys, as noted previously, are not required to pursue only actions that succeed.

There is no dispute that the plaintiffs owed the debt or that the debt was properly assigned to Unifund. T&M could have pursued different and perhaps more fruitful options. But an attorney in T&M's position at the time the relevant procedural events were happening reasonably could have in good faith chosen to pursue a foreclosure action on the ultimately quixotic theory that an amount of judgment was reasonably ascertainable from the prior judgments and fact finder reports that were referenced. Though the theory turned out to be faulty, its proponent was not so lacking in probable cause to be found to have acted vexatiously.

2

The plaintiffs next argue that the court improperly determined that the defendants had probable cause to pursue the foreclosure action because an attorney reasonably would have realized that a foreclosure action lawfully could not be commenced prior to the entry of a final judgment in the underlying debt collection case, and in this case there had not been a specific determination of the amount of prejudgment interest included in the judgment.

The trial court in its memorandum of decision did not address the plaintiffs' final judgment claim, which was raised in their posttrial brief. The plaintiffs filed a motion to reargue and reconsider on the ground that the trial court did not address the final judgment issue. The court denied the motion. The plaintiffs did not file a motion to review. We ordinarily do not review claims that have not been decided by the trial court. See *Silver* v. *Holtman*, 149 Conn. App. 239, 254–55, 90 A.3d 203 ("when an issue has not been ruled on by the trial court, an appellate court may not review the issue for the first time on appeal" [emphasis omitted]), cert. denied, 312 Conn. 904, 91 A.3d 906 (2014).

We also note, however, that the plaintiffs' argument regarding the lack of a final judgment is misplaced. The cases cited by the plaintiffs in support of their argument, *Collard & Roe, P.C.* v. *Klein*, 87 Conn. App. 337, 344–45, 865 A.2d 500, cert. denied, 274 Conn. 904, 876 A.2d 13 (2005), and *IBM Credit Corp.* v. *Mark Facey & Co.*, 44 Conn. App. 490, 493–94, 690 A.2d 410 (1997), advance the general principle that appeals can be taken only from final judgments.[8] Although the question of whether an appellate court has jurisdiction to hear an appeal

may be related to the issue of whether T&M had probable cause to foreclose, the issues are not identical. The lack of a specific amount of prejudgment interest adds a degree of imprecision to the judgment, but it does not as a matter of law eliminate probable cause, in light of the ability to peruse the record of the underlying case in order to ascertain the amount of the judgment. The judgment lien in itself did not state a specific amount of prejudgment interest; it did provide that "Unifund . . . did obtain a judgment in its favor against Ellen A. Schaeppi . . . and Ernest A. Schaeppi . . . for the sum of $9382.05 principal damages, plus prejudgment interest as awarded by the court . . . ." If the record revealed that no prejudgment interest was "awarded by the court," then presumably only the principal amount would constitute the debt subject to the judgment lien. An attorney, then, reasonably could have attempted to proceed on the theory that the lack of an amount of prejudgment interest was not necessarily a fatal defect. To the extent, then, that the award of prejudgment interest was subject to either clarification or elimination, the judgment lien may conceivably have been thought to have been amenable to foreclosure.[9]

### 3

The plaintiffs claim that the trial court erred in determining that T&M had probable cause to continue to prosecute the foreclosure action after being put on notice that the amount of damages had not been determined in the underlying debt collection action. We are not persuaded.

The plaintiffs argue that on numerous occasions throughout the litigation in the foreclosure action, T&M was "expressly notified" that the judgment in the debt collection matter contained no definite amount. They claim that T&M "fabricated" an amount of judgment and continued to prosecute the foreclosure action. The plaintiffs contend that Judge Miller's 2008 ruling on the motion to clarify "makes this abundantly clear."[10]

In the course of its ruling on the vexatious litigation claims, the trial court concluded that T&M had probable cause to continue to pursue the foreclosure action[11] and that, despite the adverse rulings by Judge Miller and Judge Satter, "there was no controlling case law rendering T&M's legal theory unreasonable . . . ." The court cited *Oglesby* v. *Prudential Ins. Co. of America*, 259 Ky. 620, 625, 82 S.W.2d 824 (1935), for the proposition that "pleadings in [a case] may be looked to in aid of the judgment, and that the certainty of the latter may be obtained from consulting preceding parts of the record containing the necessary data therefor." See *McCarthy* v. *Warden*, 213 Conn. 289, 293, 567 A.2d 1187 (1989) (court may "take judicial notice of the court files in another suit between the parties"), cert. denied, 496 U.S. 939, 110 S. Ct. 3220, 110 L. Ed. 2d 667 (1990). At the time of the initiation and continuing prosecution of

the foreclosure case, T&M had at least a colorable basis for its legal theory—that the amount of the judgment could be ascertained by examination of both fact finder reports—to support a reasonable belief in probable cause.

The trial court, in ruling on the issue of probable cause as to the continuation of the foreclosure proceedings, determined that "T&M had reason to believe there was probable cause to continue pursuit of the foreclosure action by attempting to clarify the underlying judgment inasmuch as its ambiguity was the root of T&M's struggles in the foreclosure action. T&M's strategy was that of an innovative, persistent, and zealous advocate. Based upon its legal theory that the judgment amount was ascertainable from the record, T&M was justified in appealing Judge Satter's ruling on the [plaintiffs'] motion for summary judgment." We agree with the trial court in this regard.

T&M did not lose probable cause to pursue the foreclosure action because of adverse rulings along the way. The standard for determining probable cause is not whether there are adverse rulings by the court or whether the claim is ultimately determined to be without merit. See *Falls Church Group, Ltd.* v. *Tyler, Cooper & Alcorn, LLP*, supra, 281 Conn. 104 (if claims were held unreasonable wherever law clearly held for other side, it would stifle attorney's willingness to challenge established precedent or pursue novel, although potentially unsuccessful, legal theories). Rather, the standard is whether the defendant in a vexatious litigation action had "knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of." (Internal quotation marks omitted.) *DeLaurentis* v. *New Haven*, 220 Conn. 225, 256, 597 A.2d 807 (1991). For the reasons stated in part II A 1 and 2 of this opinion, T&M had probable cause to initiate the foreclosure action and, for the same reasons, had probable cause to continue prosecution.

### B

On cross appeal, T&M claims that the court erred in concluding that T&M lacked probable cause to appeal from Judge Miller's denial of its motion to open the judgment. We agree.

On the issues of the motion to open and the appeal therefrom, the court ruled as follows: "After the Appellate Court affirmed Judge Satter's summary judgment ruling, T&M pursued a different, and perhaps more creative, strategy in order to remedy the underlying judgment in the debt collection action that the Appellate Court deemed defective. T&M sought to open the underlying judgment in the debt collection action based upon the theory that there had been a mutual mistake between the parties, to wit: a judgment had entered

without a specific dollar amount because Unifund, the [plaintiffs], and the court believed the judgment to include a specific amount of damages. Based upon this mutual mistake, T&M asked the court to use its equitable powers to open the judgment so that it could be remanded to the original fact finder so that a specific amount of damages could be found in the debt collection action. . . . At first blush, T&M's motion to open judgment may appear to be duplicative of its previous motion seeking clarification of the debt collection judgment. . . . The two motions, however, sought two fundamentally different forms of relief from the court. In seeking clarification, T&M asked Judge Miller to clarify the amount of the judgment. The court, *Miller, J.*, presumably declined to [do] so because a court does not have the power to find additional facts or different facts than a fact finder; rather, a court has the option of remanding the matter to the fact finder for further findings. In contrast to the motion to clarify, T&M's motion to open judgment invoked the equitable powers of the court to remand the case back to the fact finder, which is fundamentally different from asking the court itself to articulate the amount of the judgment. It is with these considerations in mind that this court finds that T&M had probable cause to move to open the underlying judgment in the debt collection action. Given the law and facts known to T&M, this was an aggressive, but nevertheless innovative, tactic to use in order to vindicate the interests of its client, Unifund, and seek judgment in its favor.

"The court, however, is not persuaded that T&M had probable cause to pursue an appeal of Judge Miller's denial of T&M's motion to open judgment for the reasons that follow. In ruling on the motion to open judgment, the court, *Miller, J.*, stated: Judge Satter has ruled that any judgment ever obtained in this case was fatally defective, because the [f]act[f]inder who heard the original collection claim did not recommend judgment in a specific dollar amount. This court does not have the ability to open a judgment that was never, really a judgment. . . . While it was a creative approach to move to open the underlying judgment, at this point, Judge Miller had made it painstakingly clear that a motion to open judgment could not be used as a mechanism by which to correct an order that was never legally a judgment. And, predictably, the Appellate Court agreed, finding that Judge Miller did not abuse his discretion in denying the motion to open judgment inasmuch as the Appellate Court has previously agreed that there was never a valid judgment in the underlying . . . debt collection action to begin with. *Unifund CCR Partners* v. *Schaeppi*, supra, 140 Conn. App. 286–87. Furthermore, the court finds that there was no probable cause for T&M to have raised its other argument in the second appeal, namely, that even if the underlying judgment was defective, Judge Miller's order of installment pay-

ments is a valid judgment and therefore Judge Miller abused his discretion in declining to open it. In the first appeal, the Appellate Court had already held that the order for weekly payments was entered more than three weeks after [Unifund] recorded the judgment lien. As a result, it is impossible, regardless of whether the order was a money judgment . . . for the validity of the judgment lien to be grounded in the September 11, 2006 order. *Unifund CCR Partners* v *Schaeppi*, supra, 126 Conn. App. 382–83. Additionally, as the Appellate Court noted in the second appeal, T&M's contention that a subsequent entry of an order for weekly payments could remedy a defective judgment is simply logically untenable and that there is absolutely no legal authority for such a proposition. *Unifund CCR Partners* v. *Schaeppi*, supra, [287–88]. Thus, there was also no probable cause to raise that argument. Based upon these considerations, the court concludes that T&M lacked probable cause to pursue a second appeal to the Appellate Court." (Internal quotation marks omitted.)

The trial court properly concluded that T&M had probable cause to pursue the novel theory of a motion to open.[12] However, because T&M had probable cause to pursue the motion to open, it also had probable cause to pursue an appeal; to hold to the contrary would be inconsistent. Although Judge Miller denied the motion to open and, in doing so, clearly stated that the judgment was fatally defective, the standard for probable cause in a vexatious litigation action does not depend on the meritorious nature of a claim. As recited previously in part II A 1 of this opinion, "[f]avorable termination of the suit often establishes lack of merit, yet the plaintiff in [vexatious litigation] must separately show lack of probable cause. . . . The lower threshold of probable cause allows attorneys and litigants to present issues that are arguably correct, even if it is extremely unlikely that they will win . . . . Were we to conclude . . . that a claim is unreasonable wherever the law would clearly hold for the other side, we could stifle the willingness of a lawyer to challenge established precedent in an effort to change the law. The vitality of our common law system is dependent upon the freedom of attorneys to pursue novel, although potentially unsuccessful, legal theories." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Falls Church Group, Ltd.* v. *Tyler, Cooper & Alcorn, LLP*, supra, 281 Conn. 103–104. Even though T&M received a clearly worded adverse ruling in the trial court on the motion to open, and, at the time of the filing of the appeal, it was not likely that it would prevail, T&M did not thereby lack probable cause to pursue the appeal from the denial of the motion to open.[13] An attorney reasonably could have concluded that the theory was untested and, therefore, that pursuing the appeal was reasonable. General Statutes § 52-263 provides a right of appeal to parties, such as T&M, that have been

aggrieved by decisions of a trial court.[14] T&M, then, had probable cause to pursue the appeal from the denial of the motion to open.

The judgment is reversed only as to the conclusion that T&M lacked probable cause to pursue an appeal from the denial of the motion to open and as to the award of damages, and the case is remanded with direction to render judgment in favor of T&M. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] The plaintiffs also claim that the court erred in its award of damages and that the case should be remanded for a new trial as to compensatory and punitive damages. The trial court's award of damages was based on its conclusion that T&M lacked probable cause only to pursue an appeal from the denial of its motion to open the judgment in the foreclosure action. Because we agree with T&M's claim on cross appeal that the court erred in concluding that T&M lacked probable cause as to any portion of the prior foreclosure proceeding, we necessarily reverse the court's award of damages. Thus, we have no need to address this claim.

The plaintiffs further claim that the court erred in finding that T&M did not act with malice. Malice is an element of the common-law cause of action for vexatious litigation. Malice is not an element of the statutory cause of action for vexatious litigation, but a finding of malice may act as a multiplier of damages. *Bernhard-Thomas Building Systems, LLC* v. *Dunican*, 286 Conn. 548, 554, 944 A.2d 329 (2008). Because we conclude that want of probable cause, an essential element of both statutory and common-law causes of action, is lacking, thereby defeating any claim of vexatious litigation, we need not determine whether the trial court properly found that the element of malice was not proved.

[2] In its December 18, 2013 decision, the court, *Hon. Robert F. Stengel*, judge trial referee, found that Unifund was in the business of purchasing distressed consumer debt. T&M had provided legal representation to Unifund since 1999 and had handled a significant number of collection cases on behalf of Unifund.

[3] Notably, the report provides in relevant part: "[Unifund] and the [plaintiffs] agree that the [plaintiffs] entered into an agreement with AT&T Universal on July 13, 1992 and were issued an AT&T Universal Credit Card with the account number [in question] . . . . The parties do not dispute that the [plaintiffs] used the credit card and made purchases thereon. As of August 29, 2002, the [plaintiffs] owed AT&T Universal $9,382.05."

[4] The judgment lien stated in relevant part: "[Unifund] . . . did obtain a judgment in its favor against [the plaintiffs] . . . for the sum of $9,382.05 principal damages, plus prejudgment interest as awarded by the court, and costs of suit, upon which judgment remains a principal balance, in addition to interest which continues to accrue at the statutory rate . . . ."

[5] General Statutes § 52-568 provides: "Any person who commences and prosecutes any civil action or complaint against another, in his own name or the name of others, or asserts a defense to any civil action or complaint commenced and prosecuted by another (1) without probable cause, shall pay such other person double damages, or (2) without probable cause, and with a malicious intent unjustly to vex and trouble such other person, shall pay him treble damages."

[6] Probable cause, of course, can be lost during the course of an action. See, e.g., *DeLaurentis* v. *New Haven*, 220 Conn. 225, 248, 597 A.2d 807 (1991) (there may be liability for vexatious "initiation, *continuation* or procurement of civil proceedings" [emphasis added; internal quotation marks omitted]).

[7] The plaintiffs also claim that T&M is precluded by the doctrines of collateral estoppel and res judicata from arguing the existence of probable cause. They contend that because Judge Miller ruled in 2008, in the course of denying the motion for clarification, that T&M should have been aware that the judgment in the debt collection action did not contain an amount of debt, T&M is now barred from relitigating the issue of probable cause.

"Res judicata or claim preclusion prevents a litigant from reasserting a claim that has already been decided on the merits. Collateral estoppel, or issue preclusion, prevents a party from relitigating an issue that has been determined in a prior suit. . . . Res judicata, or claim preclusion, is distin-

guishable from collateral estoppel, or issue preclusion. Under the doctrine of res judicata, a final judgment, when rendered on the merits, is an absolute bar to a subsequent action, between the same parties or those in privity with them, upon the same claim. . . . In contrast, collateral estoppel precludes a party from relitigating issues and facts actually and necessarily determined in an earlier proceeding between the same parties or those in privity with them upon a different claim." (Citations omitted; internal quotation marks omitted.) *Milford* v. *Andresakis*, 52 Conn. App. 454, 460, 726 A.2d 1170, cert. denied, 248 Conn. 922, 733 A.2d 845 (1999).

The trial court has made no ruling regarding these doctrines; thus, the claim is not reviewable. See, e.g., *Koehm* v. *Kuhn*, 18 Conn. App. 313, 314 n.2, 557 A.2d 933 (1989). We note, however, that the doctrines of res judicata and collateral estoppel are inapplicable. Judge Miller never made a ruling in the foreclosure action as to the merits of the issue of probable cause in the plaintiffs' vexatious litigation claim. Even if the trial court were to have done so, such a ruling would be dicta, because the issue of probable cause was not before the court. An ultimate adverse ruling is a separate question from whether it was reasonable, however forlornly, to pursue the ultimately losing cause.

[8] The plaintiffs apparently seek to argue that T&M lacked probable cause in the foreclosure action because the judgment in the debt collection action was not a "full and final judgment" and thus not a valid judgment on which to foreclose. An attorney in T&M's position reasonably could have taken into consideration the fact that this court in fact considered the merits of an appeal from the same judgment and did not dismiss the appeal for lack of a final judgment. See *Unifund CCR Partners* v. *Schaeppi*, supra, 126 Conn. App. 370. The relevant inquiry is what an attorney reasonably would know at the time the action was taken. See *Embalmers' Supply Co.* v. *Giannitti*, supra, 103 Conn. App. 35.

[9] We by no means encourage or approve of the approach actually taken by T&M. We do recognize, however, that judgment awards may be ascertainable from underlying records and that our policy, as stated previously, appears to avoid penalizing creativity.

[10] In denying [Unifund's motion for clarification] Judge Miller stated: "Clearly, the judgment should not have been allowed to enter without a finite dollar amount. This is something which [T&M] should have picked up on at several readily definable points in the process, the first of which being upon seeing the decisions, there isn't a dollar amount."

[11] The court concluded that T&M had probable cause to pursue the action until its appeal from the denial of the motion to open.

[12] We agree with T&M that there was probable cause to pursue the motion to open on the ground of mutual mistake. We express no opinion as to whether the alternative ground, regarding weekly payments, was supported by probable cause.

[13] On the facts that appear in the record, it is not entirely implausible to posit that both sides had thought that the amount of the judgment was sufficiently ascertainable at the time of its entry.

[14] Section 52-263 provides: "Upon the trial of all matters of fact in any cause or action in the Superior Court, whether to the court or jury, or before any judge thereof when the jurisdiction of any action or proceeding is vested in him, if either party is aggrieved by the decision of the court or judge upon any question or questions of law arising in the trial, including the denial of a motion to set aside a verdict, he may appeal to the court having jurisdiction from the final judgment of the court or of such judge, or from the decision of the court granting a motion to set aside a verdict, except in small claims cases, which shall not be appealable, and appeals as provided in sections 8-8 and 8-9."